### No. 26745

**Michael L. Briones v. The Juvenile Court for the City and County of Denver, and the Honorable Jon L. Lawritson, one of the Judges thereof**

(534 P.2d 624)

Decided April 7, 1975.                    Rehearing denied May 5, 1975.

190

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Russell W. Richardson, Deputy, for petitioner.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for respondents.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

In December 1974, a delinquency petition was filed in the Denver juvenile court charging the petitioner Briones with rape, deviate sexual intercourse, kidnapping, conspiracy and criminal attempt to rape. Sections 18-3-401, 18-3-403, 18-3-302, 18-2-201 and 18-2-101, C.R.S. 1973.

Briones was over fourteen and under eighteen years of age, and was charged in the petition with acts which would constitute a felony if committed by an adult. Under such circumstances the juvenile court receives evidence as to probable cause that the child committed the offenses; then the court in its discretion may retain jurisdiction or decide to transfer jurisdiction to the district court.

Such a hearing was undertaken in the instant case, and during the course of the proceedings a court psychologist testified that the minor child was mentally ill. Section 27-9-102, C.R.S. 1973. Thereafter, defense counsel moved for a mandatory transfer of Briones to probate court, where he would receive specialized treatment. Section 19-3-107(5), C.R.S. 1973.

The juvenile court made a specific finding that Briones was mentally ill within the statutory definition, but then the court nevertheless denied the motion and transferred jurisdiction of the case to the district court.

Petitioner seeks a writ in the nature of prohibition restraining such action and requests the court to proceed as directed by section 19-3-107 when it has evidence of the child's undoubted mental illness.

We issued a rule to show cause why relief should not be granted, and now make the rule absolute.

The crux of the respondent juvenile court's response through the Denver district attorney is that the evidence of petitioner's mental ill health came out at a "transfer" hearing and not at an "adjudicatory" hearing as contained in the language of section 19-3-107. It is argued that upon transfer to the district court the defenses of insanity or incompetency to stand trial are still available to the juvenile.

Petitioner counters that such thinking is contrary to the stated purposes of the Children's Code. Furthermore, since there is no reason to apply the statute at one hearing but not another, it should be read to apply at any time after juvenile court acquires initial jurisdiction. We agree.

It is important to note at the outset that there are only two kinds of hearings defined in the Children's Code: adjudicatory and dispositional. Section 19-1-103(1) and (13), C.R.S. 1973. In fact, the transfer hearing is not separately provided for, but is an adjunct of and emanates from the commencement of an adjudicatory hearing.

The proceedings began with the filing of the delinquency petition, which in turn activated section 19-3-106 entitled "adjudicatory hearing." Part of that same section, subsection (4)(b), states:

"Upon request of the district attorney, [the court shall] continue the case for further investigation and a transfer hearing to determine whether the jurisdiction of the juvenile court over the child should be waived, . . ."

Thus, the transfer hearing really is a continuation of the adjudicatory process already begun. The judge hears the same evidence. At some point the court must decide whether to transfer the child or to proceed with a separate adjudication. However, while in the process of hearing evidence upon which to base its decision, the court heard testimony from a court psychologist that this child is mentally ill. This evidence is just as important as is that which established that the child committed the acts because it explained his bizarre behavior.

Section 19-3-107 provides *inter alia:*

"(1) If it appears from the evidence presented at an adjudicatory hearing that the child may be mentally ill or mentally deficient, as these terms are defined in section 27-9-102, C.R.S. 1973, the court shall suspend the hearing on the petition and shall either:

"(a) Order that the child be examined by a physician, psychiatrist, or psychologist, and may place the child in a hospital or other suitable facility for the purpose of examination; or

"(b) Proceed as provided in section 27-9-105 or 27-9-106, C.R.S. 1973.

. . . .

"(5) The juvenile court of the city and county of Denver shall transfer any child subject to the provisions of this section to the probate court of the city and county of Denver for proceedings under article 9 or 10 of title 27, C.R.S. 1973.''

    The court, while the minor is still under its jurisdiction, cannot ignore the competent evidence of an expert witness relating to the mental condition of the minor. For the plain impact of the statute is clear. First, it is protective: it prevents a juvenile who is not fully cognizant of the nature of the proceedings or who is not in full command of his mental facilities from having to answer on a delinquency matter. Second, the statute reflects legislative intent that a mentally ill or deficient juvenile should not be required to go through ordinary juvenile proceedings. Rather, the sick child should be examined in a hospital or other suitable facility as the Code states, and if the results of that examination confirm the mental illness, then transfer should be made to the probate court. Such court not only specializes in mental health problems but also has the power to order appropriate treatment. Finally, the stated philosophy of the Children's Code is rehabilitation, not punishment, an objective best accomplished within a system tailored especially for the young. Section 19-1-102.

It is no answer to insist that Briones could plead insanity at his trial in the adult court. The burden of proof of insanity is far more stringent than mental illness, and the treatment available to Briones even if he were found insane would be far different than he would receive as a mentally ill child. If found sane the petitioner would receive no treatment for his illness but would be sentenced as an adult.

    Under section 19-3-108, the court at a transfer hearing must consider "[w]hether the interests of the child . . . would be better served by the juvenile court waiving its jurisdiction over the child and transferring jurisdiction over him to the district court.'' It is a stated public policy in the Children's Code that the best interest of a juvenile shown to be mentally ill would be relief under that Code.

    The provisions of title 19 are supposed to be read and

194

construed together. *Geisler v. People in the Interest of Geisler*, 135 Colo. 121, 308 P.2d 1000 (1957). They are also supposed to be liberally construed. Section 19-1-102(2). With this in mind we choose not to quibble over the name-tag pinned on a specific hearing.

■ We therefore hold that when a juvenile court judge hears competent evidence from which he is convinced and actually finds that a child is mentally ill, that child comes under the protection of section 19-3-107 whether the evidence is in the original "adjudicatory" hearing or in the spin-off "transfer" hearing.

The rule is made absolute, with directions that the court proceed as provided in section 19-3-107.

MR. CHIEF JUSTICE PRINGLE does not participate.